UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIDIA M., <br>     Plaintiff <br> v. <br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br>     Defendant. | Case No. 2:18-cv-03179-GJS <br><br> **MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff[1] filed a complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner") denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 10, 11] and briefs addressing disputed issues in the case [Dkt. 24 ("Pltf.'s Br.") and Dkt. 26 ("Def.'s Br.")]. The Court has taken the parties' briefing under submission without oral argument. For the reasons discussed below, the Court finds that this matter should be affirmed.

---

[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

In September 2014, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of January 1, 2011. [Dkt. 21, Administrative Record ("AR") 18, 71-72.] The Commissioner denied her initial claim for benefits on January 26, 2015. [AR 96-100, 102-106.] On September 14, 2016, a hearing was held before Administrative Law Judge ("ALJ") Ken H. Chau. [AR 36-70.] On February 23, 2017, the ALJ issued a decision denying Plaintiff's request for benefits. [AR 18-29.] Plaintiff requested review from the Appeals Council, which denied review on February 20, 2018. [AR 1-5.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 416.920(b)-(g)(1). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2011, the alleged onset date. [AR 20 (citing 20 C.F.R. § 416.971).] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: asthma, allergic rhinitis, arthritis of the hands, and plantar fasciitis. [*Id.* (citing 20 C.F.R. § 416.920(c)).] The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 24 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.]

Next, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a range of medium work, specifically she can:

> lift and/or carry fifty pounds occasionally, twenty-five pounds frequently, stand and/or walk six hours and sit six hours in an eight-hour workday. The claimant can frequently climb ramps, stairs, ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to pulmonary irritants such as dusts, fumes, odors, gases, and poor ventilation. The claimant can understand, remember, and carry out simple and complex instructions, interact appropriately with supervisors, coworkers and the general public and respond appropriately to usual work situations and

changes in a work setting. [AR 25.]

Applying this RFC, the ALJ found at step four that Plaintiff was capable of performing her past relevant work as a babysitter, bagger, and sales clerk and thus she is not disabled. [AR 27-28.]

Plaintiff objects to the ALJ's decision of non-disability on three related grounds: (1) that the ALJ erred by rejecting the psychiatric examining opinion by Dr. Nadella; (2) that the ALJ failed to incorporate all of the limitations found by Dr. Nadella in the residual functional capacity finding; and (3) that the ALJ erred in evaluating the severity of her depression. [Dkt. 24.] Defendant asserts that the ALJ's decision should be affirmed. [Dkt. 26.]

## III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074. The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## IV. DISCUSSION

### A. The ALJ Did Not Err in Rejecting Dr. Nadella's Opinion

First, Plaintiff argues that the ALJ erred in giving "no weight" to Dr. Nadella's examining opinion because (1) the ALJ failed to consider all of the

3

limitations opined by Dr. Nadella and (2) the ALJ failed to cite evidence supporting his opinion that Plaintiff's depression was likely to improve within twelve months.

In response, Defendant argues that ALJ properly weighed conflicting medical-opinion evidence and formulated an RFC best supported by the weight of the record as a whole. Defendant further argues that the ALJ provided specific and legitimate reasons explaining how he weighed the evidence and identified substantial evidence in the record supporting his findings. The Court finds that a remand or reversal on this basis is not warranted.

**1. Federal Law**

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *see also* 20 C.F.R. § 404.1527. In general, a treating physician's opinion is entitled to more weight than an examining physician's opinion and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).[2]

An ALJ must provide clear and convincing reasons supported by substantial

---

[2] For claims filed on or after March 27, 2017, the opinions of treating physicians are not given deference over the opinions of non-treating physicians. *See* 20 C.F.R. § 404.1520c (providing that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"); 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). Because Plaintiff's claim for DIB was filed before March 27, 2017, the medical evidence is evaluated pursuant to the treating physician rule discussed above. *See* 20 C.F.R. § 404.1527; [Def. Br. at 5 n.5 (citing Social Security Ruling ("SSR") 96-2p).]

evidence to reject the uncontradicted opinion of a treating or examining physician. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31). Where such an opinion is contradicted, however, an ALJ may reject it only by stating specific and legitimate reasons supported by substantial evidence. *Bayliss*, 427 F.3d at 1216; *Trevizo*, 871 F.3d at 675. The ALJ can satisfy this standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (when a treating physician's opinion is not given controlling weight, factors such as the nature, extent, and length of the treatment relationship, the frequency of examinations, the specialization of the physician, and whether the physician's opinion is supported by and consistent with the record should be considered in determining the weight to give the opinion).

### 2. **Psychiatric Examining Opinions**

#### i <u>Examining Psychiatrist – Dr. Chaudhry</u>

On December 16, 2014, Monika Chaudhry, M.D. performed a psychiatric evaluation of Plaintiff at the request of the state agency. [AR 308-314.] At her appointment, Plaintiff was appropriately dressed, and her attitude and degree of cooperation were adequate for the examination. [AR 308.] She did not display any psychomotor agitation or retardation. Plaintiff reported a "multi-year history" of severe depression that medication had not helped. She denied a history of psychiatric hospitalization, but she reported that she had received psychiatric treatment and medication. [AR 309.]

Upon mental status questioning, Plaintiff could name the current president. [AR 312.] She stated that Washington DC is the capital of the United States and Sacramento is the capital of California. Plaintiff could perform serial 7's. Plaintiff could spell "world" forward and backwards. When asked the similarities between

an apple and an orange, she said they are both round and they are different in taste. When asked the meaning of the proverb "don't judge a book by its cover," she said, "things are different on the outside." [AR 312.]

Dr. Chaudhry diagnosed Plaintiff with "Major depressive disorder, recurrent, moderate" and assessed a GAF score of 65. [AR 312-313.] Dr. Chaudhry further opined that Plaintiff had no impairment in her mental/social functioning. [AR 313.] Plaintiff could also maintain regular attendance in the work place and perform work activities on a consistent basis with no impairment. [AR 313.]

### ii. Examining Psychiatrist – Dr. Nadella

On October 25, 2016, Rama K. Nadella, M.D. performed a second complete psychiatric evaluation of Plaintiff.[3] [AR 498-506.] On examination, Dr. Nadella noted that Plaintiff has never been psychiatrically hospitalized, but she has taken psychiatric medications in the past.

Upon mental status questioning, Plaintiff could not recall what she ate for breakfast. She could not perform serial 3's. She could not name the current president. She was not able to spell "world" forwards and backwards. When asked the similarities between an apple and an orange, she said she did not know. When asked the meaning of the proverb "don't judge a book by its cover," she said, I don't know what it means. [AR 500.]

Dr. Nadella diagnosed Plaintiff with "Major Depression, recurrent, moderately severe," as well as "Dysthymia," and assessed a GAF score of 55. [AR 501.] Dr. Nadella further opined that Plaintiff would not be able to maintain regular attendance in a work setting five days a week, eight hours a day, would be markedly limited in performing work activities on a consistent basis, would be moderately limited in performing work activities without additional supervision, would be

---

[3] At the conclusion of the September 14, 2016 administrative hearing, ALJ Chau ordered Plaintiff to attend a second psychiatric consultative examination. [AR 68.]

6

moderately limited in her ability to interact with the public, coworkers, and supervisors, would be moderately limited in dealing with the usual stressors encountered in competitive work, and she could not perform detailed or complex work. [AR 501-502.] Dr. Nadella described Plaintiff's condition as "likely to improve with the medication changes and more regular counseling with cognitive behavior therapy within 12 months. [AR 501.]

### 3. Analysis

Here, Plaintiff contends that the ALJ committed error because he failed to adopt Dr. Nadella's examining opinion over the conflicting examining opinion of Dr. Chaudhry. Having reviewed the ALJ's opinion and the record, however, the Court does not agree that the ALJ failed to adequately weigh the medical evidence when rejecting Dr. Nadella's opinion. Contrary to Plaintiff's assertions, the ALJ did not simply ignore the limitations assessed by Dr. Nadella. Instead, the ALJ properly rejected Dr. Nadella's opinion in its entirety as inconsistent with the weight of the medical evidence.

In rejecting Dr. Nadella's opinion, the ALJ stated that:

> During the October 2016 psychiatric consultative evaluation, the claimant was anxious, depressed and tearful. The claimant's thoughts were coherent and organized, her speech was normal, and she was alert and fully oriented. On further mental status questioning, Ms. Medina presented as not knowing the name of president of the United States, not knowing the reason for the consultative examination and being unable to perform serial 3s and unable to identify the similarities between an apple and an orange.
> 
> …
> I give no weight to Dr. Nadella's opinion. Dr. Nadella's opinion is not supported by the treatment records. Although there were some abnormal status examination findings, they were from a one-time examination and there is no evidence to suggest that the one-time findings are expected to last for twelve consecutive months or cause limitations lasting for twelve months. Indeed, Dr. Nadella herself opined that with medication adjustment and more regular counseling with cognitive behavior therapy, the claimant's condition is likely to

7

improve within twelve months.

[AR 24.]

The ALJ's conclusion that Dr. Nadella's opinion was entitled to "no weight" because it was inconsistent with the treatment records, the weight of the medical evidence, and Plaintiff's own testimony is supported by substantial evidence. The Court's decision is grounded on three reasons. First, the ALJ discounted Dr. Nadella's opinion because it was inconsistent with the treatment records. In doing so, the ALJ initially found that Dr. Nadella's mental status examinations revealed some abnormal findings. [AR 23.] However, the ALJ found those mental status examinations unreliable because they stemmed from a one-time examination. While typically an examining physician's opinion should not be discounted based on a one-time examination, the ALJ here was specifically referring to the singular nature of Dr. Nadella's mental status observations. *See Cleghorn v. Colvin,* No. 15-cv-295 MRW, 2015 WL 8282508, at *3 (C.D. Cal. Dec. 8, 2015) (rejecting the rationale that a one-time examination discredits a physician's opinion). This distinction is significant because, as the ALJ found, the longitudinal history of Plaintiff's treatment records consistently showed unremarkable mental status examinations. [AR 22.] In light of the numerous other mental status examinations contrasting Dr. Nadella's one-time mental status examination, this was a specific and legitimate reason to discount Dr. Nadella's opinion.

Second, the ALJ gave greater weight to the other mental health opinions provided by consultative examining psychiatrist Dr. Chaudhry and the supporting reviewing opinion from Dr. Gold. In weighing Dr. Chaudhry's examining opinion, the ALJ highlighted the stark differences between the examinations performed by Dr. Chaudhry and Dr. Nadella. In both examinations, Plaintiff's "thoughts were coherent and organized, her speech was normal, and she was alert and fully oriented." [AR 23, 311, 500.] However, the ALJ noted in Dr. Chaudhry's examination, Plaintiff was able to "concentrate to perform simple as well as some

moderately complex calculations (including serial 7s)," she could name the President of the United States, and she was able to identify the similarities between an apple and an orange. [AR 23, 312.] However, during Dr. Nadella's exam, the ALJ remarked that Plaintiff "presented as not knowing the name of the president of the United States, not knowing the reasons for the consultative examination" (although the reason for a second examination was explained to Plaintiff on the record during her administrative hearing just a month earlier [AR 68], "and [she was] unable to perform serial 3s and unable to identify the similarities between an apple and an orange." [AR 23.] The ALJ then noted that Dr. Gold, the state agency reviewing physician, reviewed Plaintiff's records and, like Dr. Chaudhry, opined that Plaintiff's "depressive disorder is not severe." [AR 23.]

The ALJ was entitled to reject Dr. Nadella's opinion as an outlier in favor of the greater weight of the evidence opined by Drs. Chaudhry and Gold, both of whom opined that Plaintiff's depression was not severe. Of the medical opinions addressing Plaintiff's mental health functioning in the record, two out of three of those opinions found that Plaintiff had no limitations in her mental health functioning. AR 23. The ALJ legitimately concluded that Dr. Nadella's opinion was unsupported by the other evidence in the record and thus entitled to less weight.

Finally, the ALJ properly found that Plaintiff's daily activities far exceeded the drastic limitations assessed by Dr. Nadella. The ALJ noted that Dr. Nadella's findings that Plaintiff "was markedly limited [in] performing work activities on a consistent basis' was in direct conflict with Plaintiff's own admitted capabilities. As the ALJ found, Plaintiff "performs tasks that are assigned to her by the family she lives with, such as picking up a child." [AR 24.] Plaintiff is also able to "attend to and engage in activities that are not part of her daily life such as attending medical appointments independently and using public transportation." [AR 24.] Plaintiff is further "able to care for her personal needs and hygiene, prepare meals, perform some household chores and manage funds on her own behalf." This level of activity

is a far cry from the marked limitations opined by Dr. Nadella.

Overall, the ALJ was tasked with resolving the conflict between the two examining physicians' opinions, which he did by providing specific and legitimate reasons supported by substantial evidence. In doing so, the ALJ weighed Dr. Nadella's findings against the findings of the other consultative examiner and the reviewing physician and found that Dr. Chaudhry's opinion was better supported by the record. Ultimately, it is the ALJ's province to synthesize the medical evidence. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."). Remand is therefore not warranted on this issue.

**B.     Substantial Evidence Supports the RFC**

Relatedly, Plaintiff argues that her RFC is erroneous because the ALJ failed to incorporate all of the limitations assessed by Dr. Nadella.

The ALJ must consider all of the relevant medical opinions as well as the combined effects of all of the plaintiff's impairments, even those that are not "severe." 20 C.F.R. §§ 404.1545(a); 416.945(a); *Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003). "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ must determine a claimant's limitations on the basis of "all relevant evidence in the record." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Here, the ALJ assessed an RFC with all of the limitations the ALJ found credible and supported by substantial evidence. There was no requirement that the RFC assessment include limitations unsubstantiated by objective medical evidence or based on subjective symptom allegations that were properly discounted. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Consequently, the

Court finds Plaintiff fails to show the ALJ did not adequately consider her mental impairments in the RFC.

### C. The ALJ Properly Evaluated Plaintiff's Impairments at Step Two

Finally, Plaintiff contends that the ALJ erred in finding that her major depressive disorder was not severe at Step Two of the sequential evaluation. [Dkt. 24 at 10-11.] The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff did not have a severe mental impairment. [Dkt. 26 at 4-5.]

The Commissioner defines a severe impairment as "[a]n impairment or combination of impairments . . . [that] significantly limit[s] your physical or mental ability to do basic work activities," including, inter alia: "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1522. "An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis added) (citations and internal quotation marks omitted). Step two "is a *de minimis* screening device [used] to dispose of groundless claims, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." *Id.* (emphasis added) (citations and internal quotation marks omitted). The claimant bears the burden of proof at step two. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

In this case, the ALJ made extensive findings to support his determination that Plaintiff's mental impairment of depression was not severe. First, the ALJ found that although Plaintiff's physicians diagnosed depression, that diagnosis was indicative of only mild symptoms, and "[t]he existence of a mental impairment

11

alone does not establish functional limitation or disability." *Leddy v. Berryhill*, 702 F. App'x 647, 648 (9th Cir. 2017). As addressed above, the ALJ relied on Dr. Chaudhry's examining opinion when concluding that Plaintiff's depressive disorder was a medically determinable impairment, but it did not cause more than a minimal limitation in Plaintiff's ability to perform basic mental work activities and was, therefore, non-severe. AR 22. Dr. Chaudry diagnosed Plaintiff's major depressive disorder but opined that Plaintiff had no limitations in her "ability to understand, remember and apply information, no limitation in the ability to interact with others, no limitation in the ability to concentrate, persist, or maintain pace and no limitation in the ability to adapt or manage oneself." [AR 24, 313.]

Further, upon testing, Dr. Chaudhry assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 65. [AR 313.] "A GAF of 61-70 indicates '[s]ome mild symptoms (*e.g.*, depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, with some meaningful interpersonal relationships.'" *Tagger v. Astrue*, 536 F. Supp. 2d 1170, 1174 n.8 (C.D. Cal. 2008). Dr. Gold further reviewed the record and agreed that Plaintiff did not have a severe mental impairment. [AR 24, 71-76.] *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.)"

Second, the ALJ correctly noted that Plaintiff had reported improvement with her medication and there was no evidence to suggest that Plaintiff's depression related limitations "were expected to last for twelve consecutive months or cause limitations lasting for twelve months." [AR 23.] The ALJ stated that a January 2016 progress note indicated that Plaintiff was feeling better. Plaintiff's psychotherapist noted that she was relaxed in session and Plaintiff reported that "she was thinking of plans to go back to work at the 99 cents store as a stocker." [AR

329.] Plaintiff further reported feeling better following an increase in dosage of her medication. [AR 332.] Impairments that can be controlled effectively with medication are not disabling. *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The Ninth Circuit has affirmed findings that depression is not a severe impairment where "[a]lthough the record established that [claimant] had a long history of depression, the record also established that her depression was treatable and responsive to medication." *Dorrell v. Colvin*, 670 F. App'x 480, 480 (9th Cir. 2016).

Plaintiff nonetheless argues that the ALJ's rationale was deficient because the routinely normal mental status examinations were observed while Plaintiff was "seeking treatment for other medical problems" and not performed by a mental health professional. [Dkt. 24 at 12.] The Court is not persuaded by this argument. As noted by the ALJ, Plaintiff's mental health treatment consisted of medication management with antidepressant medications and therapy. [AR 22.] Plaintiff received her psychotherapy and medications from East Valley Community Health Center. The mental status examinations noted by the ALJ were also performed at East Valley Community Health Center. The overall mental health evidence in the record is limited. The ALJ was therefore entitled to rely on all of the mental status examinations performed by medical professionals documenting that Plaintiff had no suicidal ideation and regularly demonstrated "an appropriate mood and affect." *See e.g.* [AR 270, 274, 276, 283, 286, 290, 294, 317, 361]; s*ee Corn v. Astrue*, No. 1:11–cv–00888 AWI GSA, 2012 WL 2798802, at *13 (E.D. Cal. July 9, 2012)("We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.")

Overall, the totality of the credited evidence from Plaintiff's physicians demonstrated that Plaintiff's depression had little to no impact on her ability to perform her past relevant work. In making this determination, the ALJ reviewed the weight of the medical evidence and Plaintiff's treatment history, which documented

complaints of depressive symptoms, but also showed no significant evidence of diminished concentration, impaired memory, or limitations inconsistent with the mental demands of Plaintiff's past relevant work. [AR 22, 28.] The ALJ's findings with respect to Plaintiff's mental impairments were therefore supported by substantial evidence. This Court cannot disturb the ALJ's findings if they are supported by substantial evidence, even though other evidence may exist which supports plaintiff's claim. *See Torske v. Richardson*, 484 F.2d 59, 60 (9th Cir. 1973). Given this evidence, the ALJ properly found that Plaintiff's depressive disorder is non-severe.

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: April 23, 2019

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE